UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| RAMSEY R. GOURD,<br>    *Plaintiff*,<br>v.<br>INDIAN MOUNTAIN SCHOOL, INC.,<br>    *Defendant*. | Civil No. 3:18-cv-582 (JBA)<br><br>January 17, 2019 |

**RULING ON DEFENDANT'S MOTION TO DISMISS**

Plaintiff Ramsey R. Gourd brings this diversity action seeking damages for the sexual abuse he claims to have suffered at the hands of a teacher while enrolled and living at Indian Mountain School ("Defendant"). Plaintiff asserts claims for negligence, recklessness, negligent infliction of emotional distress, and intentional infliction of emotional distress. Defendant moves to dismiss Plaintiff's claim for intentional infliction of emotional distress. For the reasons that follow, Defendant's Motion to Dismiss is granted.

**I.    Background**

Plaintiff attended Indian Mountain School from September 1977 to June 1980, when he was 12 to 15 years old. (Compl. [Doc. # 1] ¶ 1.) "Indian Mountain School, founded in 1922, is an exclusive private boarding and day school for boys and girls in kindergarten through ninth grade, in Lakeville, Connecticut." (*Id.* ¶ 2.)

"At the time of the sexual abuse and exploitation described in this Complaint, Connecticut law (Conn. Gen. Stat. Sec. 17-38a) required Indian Mountain School, the school's Headmaster and Assistant Headmaster, the school's teachers, its staff psychiatrist, and its registered nurse to report suspected child sexual abuse to state child welfare and law enforcement authorities." (*Id.* ¶ 13.) Similarly during this period, "Connecticut law (Conn. Gen. Stat. Sec. 17-38b) required Indian

Mountain School, the school's Headmaster and Assistant Headmaster, the school's teachers, its staff psychiatrist, and its registered nurse to immediately report to state child welfare authorities if they had reasonable cause to believe that one or more students were in danger of being sexually abused, even if they did not have reasonable cause to suspect that any such abuse had actually occurred." (*Id.* ¶ 14.)

Nonetheless, according to Plaintiff, "at the time [he] entered and attended Indian Mountain School, the school employed English teacher Christopher Simonds, a pedophile who preyed and had for years been preying on vulnerable children in the school's care." (*Id.* ¶ 15.) Simonds "sexually abused, assaulted, molested, exploited and threatened [Plaintiff] when [Plaintiff] was a vulnerable and defenseless boy at the school." (*Id.* ¶ 18.)

Plaintiff claims that "Headmaster Peter Carleton, Assistant Headmaster Steven Carver, multiple other faculty members and staff, and members of the Indian Mountain School Board of Trustees knew and should have known of Simonds' abusive and manipulative conduct and his ongoing and frequent sexual abuse of the defenseless boys entrusted to the school's care." (*Id.* ¶ 23.) More specifically, Plaintiff alleges that "Carleton first learned of Simonds' sexual interest in young boys from, among other sources, Steven Carver, a teacher and Assistant Headmaster of Indian Mountain School, Michele Nemiroff, a teacher at the school, and Bernice Harned, the school's registered nurse." (*Id.* ¶ 24.)

"Carver learned in or about the Spring of 1977 that Simonds possessed hard core child pornography, including 8 mm films, magazines, and photographs depicting adults sexually assaulting and abusing pubescent and pre-pubescent boys and girls." (*Id.* ¶ 25.) According to Plaintiff, "[a]t the time Carver learned of Simonds' possession of hard core child porn, Ramsay Gourd was a 12-year old child finishing his seventh grade at Indian Mountain School: Simonds

2

had been abusing him since the beginning of the year." (*Id.* ¶ 26.) Defendant points out that "this allegation must be in error" because, inter alia, the Complaint elsewhere "alleges that Simonds began abusing Plaintiff when he was 12, at the beginning of his seventh grade year, which would have been the fall of 1977, not the spring." (Def.'s Mem. Law Supp. Mot. Dismiss [Doc. # 25] at 3 n.1.)

"According to Carver's sworn testimony, Simonds' pornography, some of which Carver had confiscated from the basement of Simonds' apartment on campus," showed "'fairly young, ... twelve to sixteen year old males'" engaged in sexual activity. (Compl. ¶ 27.) Some of this pornography "showed adults forcing children to have sex with each other[.]" (*Id.* ¶ 28.) In approximately "the spring of 1977, Carver showed the child pornography to the school's staff psychiatrist, Charles S. Mirabile, Jr., and to the school's registered nurse, Bernice Harned." (*Id.* ¶ 29.) Nurse Harned described the pornography as consisting of "[y]ounger children[,]" "up to and including nine or ten years old[,]" engaging in sexual acts. (*Id.* ¶ 30.) The pornography bore a mailing label addressed to Simonds. (*Id.* ¶ 31.) When Nurse Harned and "Carver showed Simonds' pornography to the school's staff psychiatrist, Dr. Mirabile, she told Mirabile that she 'was concerned because Chris Simonds was always touching and hugging the students and especially those in his special photography group or club.'" (*Id.* ¶ 32.)

Plaintiff also asserts that "[i]t was well-known to Indian Mountain School administrators, faculty and staff, before and during Ramsay's attendance at the school, that Simonds surrounded himself with a group of young male students known as 'Simonds' boys' and 'Simonds' pets'." (*Id.* ¶ 33.) Plaintiff "was a member of this group[.]" (*Id.* ¶ 34.) Nurse Harned observed Simonds touching the boys in his photography club "'more intimately that he did anyone else at the school[.]'" (*Id.* ¶ 37.) "When Carver and Harned showed Simonds' pornography to Dr. Mirabile,

3

Harned told Mirabile that Simonds 'did touch and feel' his favored boys, and that Simonds 'would allow them to come over to his home at odd hours.'" (*Id.* ¶ 38.)

According to Plaintiff, "[a]round this same time, in or about the Spring of 1977, Harned told all of this same information about Simonds' child pornography and his predilection for the young boys in his 'print club' and his inappropriate touching and feeling of the boys to the then outgoing Headmaster Dick Rouse, and to the Chairman of the Board of Trustees, William Cuddy." (*Id.* ¶ 39.) That summer, "Carver showed Simonds' hardcore child pornography to the school's incoming Headmaster, Peter Carleton; and Nurse Harned told Carleton all of the same concerns about Simonds' inappropriate touching and feeling of young boys that she had previously shared with Dick Rouse and William Cuddy." (*Id.* ¶ 40.) Also in approximately 1977, "Carver learned from a former Indian Mountain School student that Simonds was known to be sharing his hardcore pornography with students." (*Id.* ¶ 44.)

"From 1977 onward – including the entirety of [Plaintiff]'s eighth and ninth grade years at Indian Mountain School – Assistant Headmaster Carver suspected that Simonds was a pedophile." (*Id.* ¶ 46.) "Before and during [Plaintiff]'s attendance at the school, Carleton, Carver and other members of the school faculty and staff knew that Simonds frequented the boys['] dormitory and individual boys['] rooms after lights out." (*Id.* ¶ 47.) "Before and during [Plaintiff]'s attendance at the school, Carleton, Carver and other members of the school faculty and staff knew that Simonds invited boys to his apartment after lights out." (*Id.* ¶ 48.)

## II. Defendant's Motion to Dismiss

### A. Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S.

4

662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although detailed allegations are not required, a claim will be found facially plausible only if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Conclusory allegations are not sufficient. *Id.* at 678–79; *see also* Fed. R. Civ. P. 12(b)(6).

### B. Intentional Infliction of Emotional Distress

A plaintiff claiming intentional infliction of emotional distress ("IIED") in Connecticut must establish four elements:

> (1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress and (4) that the emotional distress sustained by the plaintiff was severe.

*Petyan v. Ellis*, 200 Conn. 243, 253 (2006). "'Liability for intentional infliction of emotional distress requires conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind.'" *Brownville v. Indian Mountain Sch.*, No. 3: 14-CV-1472 (JBA), 2017 WL 3726467, at *2 (D. Conn. Aug. 29, 2017) (quoting *Ancona v. Manafort Bros., Inc.*, 56 Conn. App. 701, 712 (2000)).

While there is no "broad rule that nonfeasance, as a matter of law, cannot ever support an IIED claim[,]" the Connecticut Supreme Court's decision in *Carrol v. Allstate Ins. Co.* "does establish a high bar for supporting IIED claims by claims of omission or nonfeasance . . . ." *Id.* at 5 (discussing *Carrol v. Allstate Insurance Co.*, 262 Conn. 433 (2003)). As this Court noted in *Brownville*, in the context of a related IIED claim, "the key locus of analysis is not individual teachers or IMS employees, but whether the board of trustees knew or should have known that

5

emotional distress was a likely result of its conduct and whether its nonfeasance was extreme and outrageous." *Id.* at 5.

Defendant argues that the Complaint does not allege sufficient facts to establish that the *Board*—as opposed to non-Board member employees and officers of the school—"knew of Simonds' predilections either before or during Plaintiff's attendance." (Mem. Law. Supp. Mot. Dismiss at 9.) Defendant contends that "although there were allegedly reports in the late 1970s that Simonds possessed hardcore pornography and frequently hugged some of his students, this information is insufficient as a matter of law to establish an awareness by the Board that Simonds was a pedophile." (*Id.* (citing Compl. ¶ 39.)) This characterization understates the potential import of Plaintiff's allegations in the Complaint, insofar as Plaintiff alleges that in Spring 1977 Harned informed William Cuddy, then Chairman of the Board, about Simonds' possession of child pornography. (*See* Compl. ¶ 39.)

In order to establish a claim for negligent infliction of emotional distress, a "plaintiff must prove that the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that that distress, if it were caused, *might* result in illness or bodily harm." *Carrol*, 262 Conn. at 446 (emphasis added). By contrast, in order to establish an IIED claim, a plaintiff must prove "that the actor *intended* to inflict emotional distress; or that he knew or should have known that emotional distress was a *likely* result of his conduct[.]" *Petyan*, 200 Conn. at 253 (emphases added).

In his Complaint, the only knowledge of Simonds' wrongful behavior that Plaintiff attributes to the Board is Cuddy's knowledge from Harned's report to him that Simonds possessed

child pornography and that he "was always touching and hugging" students.[1] (Compl. ¶¶ 32, 39.) While a report to a Board chairman affects the analysis of whether Defendant is liable on the negligence-based claims at issue in this case, these facts if proved to be known by Cuddy fail to meet the heightened standard of plausibly showing that Cuddy's failure to take action regarding Simonds could establish the Board's *intentional* failure to act or that the Board knew or should have known that its inaction would *likely* result in extreme emotional distress. Accordingly, Defendant's Motion to Dismiss will be granted.

### III. Conclusion

For the reasons set forth above, Defendant's Motion to Dismiss is granted.

IT IS SO ORDERED.

/s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 17th day of January 2019.

---

[1] Plaintiff here alleges no other facts suggesting Board awareness of Simonds' crimes prior to 1985, after Plaintiff had already left the school. Indeed, Plaintiff alleges in part that Headmaster Peter Carleton and Assistant Headmaster Steven Carver conspired to hide their knowledge of Simonds' wrongdoing from the Board in that year, when the Board began investigating Simonds' actions in earnest. By contrast, in *Brownville*, the plaintiff was still enrolled at IMS in 1985 when the Board received a parent complaint regarding Simonds' abuse, *see* 2017 WL 3726467, at *6, a red flag that has no bearing in this case because here, Plaintiff had already left the school five years earlier, in 1980. (Compl. ¶ 122.)

7